UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

OFFICEMART, INC.  CASE NO. 21-01590-5-DMW
CHAPTER 11
DEBTOR.

| | |
|---|---|
| OFFICEMART, INC. | ) ) ) ) |
| *Plaintiff*, | ) ) ) |
| vs. | ) AP NO. 21-_____ ) |
| LEGACY DEFENCE LLC, NICOLE HERSTIK, COLOR ONE CAPITAL CO., LTD d/b/a GLO GLOVE, PK INTERFREIGHT CO., LTD., MEDITERRANEAN SHIPPING COMPANY S.A., JEFFREY M. ZABNER, A LAW CORPORATION, TOPOCEAN CONSOLIDATION SERVICE (LOS ANGELES) INC., and TAKE CARE INTERTRADE CO., LTD. | ) ) ) ) ) ) ) ) ) ) ) ) |
| *Defendant*. | ) ) |

COMPLAINT
[JURY TRIAL DEMANDED]

**NOW COMES** Plaintiff OFFICEMART, INC., by and through its undersigned counsel of record, hereby complaining of Defendants, by alleging and asserting as follows:

### INTRODUCTION AND NATURE OF THE ACTION

1. This action is commenced by Plaintiff against Defendants, seeking compensatory, statutory, treble and punitive damages, attorneys' fees and costs and injunctive relief.

### JURISDICTION AND VENUE

2. This adversary proceeding relates to the chapter 11 bankruptcy proceeding, which

Plaintiff commenced on July 16, 2021 (the "Petition Date"), by filing a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code, BK Case No. 21-01590-5-DMW (the "Bankruptcy Case").

3.  The Court has personal and subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151, and 157, as well as the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This Court possesses jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334 as it arises in and concerns matters affecting the administration of bankruptcy estate in the above-captioned case, see id. §157(b)(2)(A), and concerns rights duly established under the Bankruptcy Code, the United States Code, and applicable North Carolina law.

4.  This Court, pursuant to Budget Service Co. v. Better Homes of Va., 804 F.2d 289 (4th Cir. 1986), has jurisdiction to enter a final and dispositive Order granting the relief requested herein. To the extent the Court finds any of the following claims for relief to be non-core proceedings, Plaintiff consents to entry of a final Order in accordance with 28 U.S.C. § 157(c)(7).

5.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1408 and 1409, as all of the actions complained of and giving rise to the claims alleged herein arose in this judicial district, within which Plaintiff reside and Defendants regularly conducts its business operations and affairs.

6.  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to address, entertain and determine the claims for relief based on North Carolina law.

**IDENTIFICATION OF THE PARTIES**

7.  Plaintiff OfficeMart, Inc. ("OM") is a corporation organized and existing under the laws of the State of North Carolina.

8. Defendant Legacy Defence LLC d/b/a Glo Glove USA ("Legacy") is a limited liability company organized and existing under the laws of the State of Wyoming which, as discussed below, engaged in numerous transactions with Plaintiff.

9. Upon information and belief, Defendant Nicole Herstik ("Herstik"), at all times relevant was an agent of Color One and Legacy, a citizen and resident of Australia and Canada, and currently residing in Los Angeles, California.

10. Defendant Color One Capital Co., Ltd. d/b/a/ Glo Glove ("Color One") is a company organized and existing under the laws of Thailand.

11. Defendant PK Interfreight Co., Ltd., ("PK") is a company organized and existing under the laws of Thailand.

12. Defendant Mediterranean Shipping Company S.A. ("MSC") is a company organized and existing under the laws of Switzerland.

13. Defendant TopOcean Consolidation Service (Los Angeles) Inc. ("TopOcean") is a corporation organized and existing under the laws of the State of California.

14. Defendant Jeffrey M. Zabner, a Law Corporation ("Zabner") is a corporation organized and existing under the laws of the State of California.

15. Defendant Take Care Intertrade Co., Ltd. ("Take Care") is a company organized and existing under the laws of Thailand.

**FACTUAL ALLEGATIONS**

16. Plaintiff filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina.

17. OM is a total solutions company that sells products and services to businesses.

18. In 2020 and based on the COVID-19 crisis, OM entered the Personal Protective Equipment ("PPE") field.

19. PPE is equipment worn to minimize exposure to hazards that cause serious workplace injuries and illnesses.

20. Through its dealings in the PPE market, OM met Defendants Herstik and Legacy.

21. Herstik and Legacy represented to OM that they were the North American Head Distributor for Glo Glove USA and that they had the on-ground team and logistics to ensure a smooth transaction overseas.

22. Herstik and Legacy further represented to OM that she had direct contact with the factory that produced Nitrile Gloves, a representation which was false as upon information and belief, Glo Glove was purchasing gloves through Defendant Take Care.

23. At all times relevant Herstik was an agent or employee of Legacy and Color One and had authority to transact business on their behalf's.

24. Upon information and belief, Defendant Glo Glove is a supplier and distributor of Nitrile Gloves based in Thailand.

25. During the relevant times in this lawsuit, Nitrile Gloves were in hot demand.

26. As a result, OM was approached by various businesses who wanted OM to procure Nitrile Gloves.

27. These businesses included: (i) Bienali Promotions, LLC ("Bienali") , (ii) OKC Janitorial ("OKC"), (iii) Summit Medical Supply, LLC, ("Summit") and (iv) Greenlayer.

28. OM approached Herstik about purchasing Nitrile Gloves and Herstik represented to OM that Color One and Legacy could deliver the Nitrile Gloves to OM.

29. Various purchase orders were entered into between OM and Bienali, OKC, Summit and Greenlayer, only some of which are detailed in this Complaint.

30. In addition, OM entered into a distributorship agreement with Defendant Glo Glove.

31. Bienali requested 4,530 cases consisting of (i) 100 small, (ii) 140 medium, (iii) 2,230 large, and (iv) 2,060 extra-large cases.

32. OKC requested 412 cases of medium gloves.

33. Greenlayer requested 8,000 cases of varying size.

34. Summit requested 128,000 boxes or 12,800 cases or "ready stock" based on Herstik's representations to OM that she had 12,800 cases of "ready stock" cases in Thailand that could be shipped within a week.

35. Corresponding purchase orders were then entered into between OM and Legacy Defence.

## **Bienali and OKC**

36. After the purchase orders were entered into, Bienali and OKC both wired to OM the purchase price for the gloves.

37. OM then wired said funds to Defendant Zabner, the agreed upon Paymaster for the transactions.

38. Despite request, Zabner has not provided any updated information to OM as to where any funds received by him were wired, if they were.

39. There were several delays in the delivery of the Bienali and OKC orders for reasons unknown to OM.

40. The logistics for the delivery of the Bienali and OKC orders were as follows: (i) the factory would manufacture the product (which Herstik falsely represented to be Take Care), (ii) Color One would bring the product to its warehouse for inspection and loading, (iii) PK would pick up the gloves from Color One's facility and bring them to a port in Thailand, (iv) TopOcean would then be responsible for the handoff between PH and MSC and then (v) MSC would then ship the gloves from Thailand to the west coast of the United States.

41. When the containers purporting to be the Bienali and OKC orders were opened in California, it was discovered that the containers with Bienali and OKC orders were missing approximately seventy percent (70%) of the product. In addition, the product that was delivered had open cases, missing boxes from cases, and missing gloves from the boxes within the cases.

42. It is unclear to OM whether (i) Color One failed to deliver the agreed upon gloves, or (ii) if somewhere in transit with Defendant PK, Defendant TopOcean, or Defendant MSC the containers were opened, and gloves removed.

43. What was delivered was 2,462 cases.

44. Out of those cases, 151 were delivered to OKC, 2,161 were delivered to Bienali, and 150 cases were to be sold by OM for the benefit of OKC.

45. Upon information and belief, some of the aforementioned cases were light.

46. Regardless, OM was not provided full delivery of the Bienali and OKC orders.

47. Accordingly, OM could not provide Bienali and OKC what they ordered.

48. OM was also recently informed that some cases delivered to Bienali were not full.

49. OKC is owed $23,490.00 from OM related to its purchase orders.

50. Bienali is owed at least $246,780.00 from OM related to its purchase orders.

51. Since discovery of the issue, OM has sought information from Color One, Herstik, Zabner and the Legacy entities but they have refused to provide any sufficient information.

### GreenLayer

52. Greenlayer similarly ordered 1,520 cases of nitrile gloves through OM.

53. Greenlayer wired OM $136,800.00 which was then forwarded to Zabner as Paymaster.

54. After Greenlayer's order, Legacy Defence and Herstik agreed to refund approximately half of Greenlayer's order.

55. However, to date Legacy Defence and Herstik have not refunded the amounts paid related to the Greenlayer order or provided Greenlayer the gloves they ordered.

### Summit

56. Summit requested 128,000 boxes, or 12,800 cases, of "ready stock" Nitrile Gloves.

57. Herstik represented that the "ready stock" gloves would be shipped within a week.

58. In various instances, Summit paid OM $782,600 for the order, which was then forwarded to Zabner as Paymaster, who then forwarded the funds to Color One, who then forwarded the funds to Take Care.

59. After Summit's order and at least eight weeks after the gloves were promised by Herstik to have been shipped, Legacy Defence and Herstik agreed to refund Summit's order.

60. Moreover, on May 27, 2021, Take Care agreed that they would be responsible for refunding the deposit made on 64,000 boxes, or half of the order and that the process would take 2-3 weeks.

61. However, to date Take Care, Color One, Legacy Defence and Herstik have not refunded the amounts paid by Summit.

62. In addition, it is believed that Legacy Defence and Herstik are currently in position of 64,000 boxes of gloves, however Legacy Defence and Herstik refuse to provide details concerning the whereabouts of the gloves.

63. Legacy Defence and Herstik have stated to OM that they were attempting to sell the gloves that were ordered by OM related to Summit and Greenlayer but has refused to turn those gloves over in lieu of repayment.

## **FIRST CLAIM FOR RELIEF**
**(Breach of Contract – Herstik / Legacy Defence / Take Care / Color One)**

64. Plaintiff incorporates herein by reference all of the allegations in this Complaint as if fully set forth herein.

65. Plaintiff and Defendants Herstik/Legacy Defence, entered into various purchase orders referenced above.

66. Moreover, Plaintiff entered into a Distribution Agreement with Color One.

67. In addition, Defendant Take Care agreed to refund the deposit made on 64,000 boxes.

68. The Plaintiff performed each and every obligation rightfully imposed upon them under the provisions of those contracts.

69. Defendants Herstik/Legacy Defence/Take Care/Color One, however, breached the terms of the accepted contracts, as detailed above.

70. Plaintiff has made demand upon Defendants Herstik/Legacy Defence/Take Care/Color One for repayment of what is owed but Defendants have failed and refused to pay the amounts owed

71. Additionally, and implied in every contract, including the provisions of the purchase orders, is the requirement that Defendants Herstik/Legacy Defence/Take Care/Color

8

One, as a contracting party, act in good faith and make reasonable efforts to perform any obligations imposed upon them thereunder.

72. However, Defendants Herstik/Legacy Defence/Take Care/Color One (through their agents, representatives, employees, and officers) acted in bad faith, as set forth and alleged herein.

73. Furthermore, there is an implied covenant of fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

74. Accordingly, Herstik/Legacy Defence/Take Care/Color One acted in bad faith through their other actions detailed above.

75. As a direct and proximate cause of Defendants Herstik, Take Care, Color One, and Legacy Defence breaches of contract, Plaintiff has been damaged, and is entitled to recover from Defendants Herstik, Take Care, Color One and Legacy Defence, jointly and severally, an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

### SECOND CLAIM FOR RELIEF
**(Conversion - Herstik/Legacy Defence/Color One)**

76. Plaintiff incorporates herein by reference all of the allegations in this Complaint as if fully set forth herein.

77. Herstik, Legacy Defence and Color One were provided funds, which constitute assets of Plaintiff, by various buyers and of which Plaintiff was entitled to their immediate possession.

78. Defendants Herstik, Legacy Defence, and Color One unlawfully converted Plaintiff's assets to their own use and did not return the assets, even after demand from Plaintiff.

79. As a direct and proximate cause of Defendants Herstik, Legacy Defence, and Color One conversion, the Plaintiff is entitled to recover from Defendants Herstik, Legacy Defence, and

Color One, jointly and severally, an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

### THIRD CLAIM FOR RELIEF
(*In the alternative* - **Unfair and Deceptive Trade Practices- Herstik/Legacy Defence/Color One**)

80. Plaintiff incorporates herein by reference all of the allegations in this Complaint as if fully set forth herein.

81. The actions and conduct of Defendants Herstik, Legacy Defence, and Color One, delineated in this Complaint, constitute unfair or deceptive acts or practices, in or affecting commerce, in violation of N.C.G.S. §75-1.1, or similar state statute under applicable choice of law provisions.

82. The Plaintiff's claims for unfair and deceptive trade practices against Defendants Herstik, Legacy Defence, and Color One includes but is not limited to:

- A. Their concealments and/or deceptive conduct detailed above and below, which included the intentional concealment of material facts;
- B. To the extent not fraudulent or deceptive, the Defendants Herstik, Legacy Defence, and Color One reckless, unfair, and careless conduct with it being totally irrelevant whether the Defendants Herstik, Legacy Defence, and Color One acted in good faith, in ignorance of its falsity, and/or without intent to mislead;
- C. Their conversion of OM and its buyers' property;
- D. Their actions detailed above and below offends established public policy, federal and state securities law, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

83. As a direct and proximate result of the conduct of Defendants Herstik, Legacy Defence, and Color One, the Plaintiff is entitled to recover from Defendants Herstik, Legacy Defence, and Color One an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), jointly and severally to recover treble damages pursuant to N.C.G.S. §75-16, and to recover reasonable attorney's fees, as provided in N.C.G.S. §75-16.1.

### FOURTH CLAIM FOR RELIEF

**(*In the alternative* - Unjust Enrichment- Herstik/Legacy Defence/Color One)**

84. Plaintiff incorporates herein by reference all of the allegations in this Complaint as if fully set forth herein.

85. Defendants Herstik, Legacy Defence, and Color One took certain property of the Plaintiff without authority, as described above, conferring a benefit on Defendants Herstik, Legacy Defence, and Color One.

86. That property had value to the Plaintiff.

87. At the time of the taking of the property, and upon discovery of the same, the Plaintiff expected to be paid back or be provided the goods sought.

88. To the extent that said conduct does not constitute conversion, the Plaintiff is entitled to the return of said property, or the reasonable value of the property.

89. Plaintiff's expectation of repayment is reasonable and Defendants Herstik, Legacy Defence, and Color One knew that property should not be taken, or needed to be paid back, and failed to return the property.

90. As a sole and proximate result of Defendants Herstik, Legacy Defence, and Color One's unjust enrichment, the Plaintiff has suffered pecuniary losses, and is thereby entitled to judgment against Defendants Herstik, Legacy Defence, and Color One, jointly and severally, in a sum in excess of Seventy Five Thousand Dollars ($75,000.00).

## FIFTH CLAIM FOR RELIEF
**(*In the alternative* - Fraud- Herstik/Legacy Defence/Color One)**

91. Plaintiff incorporates herein by reference all of the allegations in this Complaint as if fully set forth herein.

92. The misrepresentation made by Legacy Defense and Color One, by and through its duly authorized agent Herstik, to Plaintiff consisted of the following:

    A. Time: Prior to OM funding of monies to Legacy Defence on all of the transactions above;
    B. Place: On the phone and in WhatsApp Communications;
    C. Content: That Color One could fulfill all purchase orders;
    D. What Defendants Obtained Thereby: Defendants received substantial funds from Plaintiff as outlined above/

    A. Time: April 26, 2021 and early May 2021;
    B. Place: On the phone and in WhatsApp Communications;
    C. Content: That Summit's refund would be processed by May 13, 2021
    D. What Defendants Obtained Thereby: Upon information and belief these Defendant continued to have funds in their possession related to the Summit transaction/

    A. May 19, 2021
    B. On the phone and in WhatsApp Communications;
    C. Content: That Summit's refund would be provided by Legacy Defence and Color One;
    D. What Defendant Obtained Thereby: Upon information and belief these Defendant continued to have funds in their possession related to the Summit transaction.

93. Herstik, at the time that said representations were made and at all times relevant, was an agent of Defendants Color One and Legacy Defence and had actual and/or apparent authority to bind these Defendants, since she had actual authority in all respects related to matters between OM and Legacy/Color One.

94. In addition to the affirmative misrepresentations, these Defendants failed to disclose material information which, by reason of its superior knowledge and as a matter of law it had a duty to disclose to the Plaintiff by virtue of their making a partial or incomplete representation to the Plaintiff.

95. Accordingly, these Defendants had a duty to disclose all facts material to the Plaintiff, known or reasonably ascertainable by it, since it had a duty imposed by law.

96. Defendant concealed material facts from the Plaintiff, including but not limited to the following:

      a. That all of their statements discussed above were not true;
      b. That they did not know whether their statements were true and accurate or not;
      c. That they had no intent to provide the requested product or provide a refund and intended to abscond with OM's funds;
      d. Upon information and belief, and to the extent there was not an issue in transport, that they knew the OKC/Bienali/Greenlayer loads were light.

97. These misrepresentations and failures to disclose induced Plaintiff to (i) pay monies to these Defendants, or for their benefit and (ii) forego additional inquiry into the status of the funds OM had provided these Defendants.

98. Plaintiff could not discover that these Defendants' intent or that their representations were untruthful through the exercise of reasonable diligence.

99. Accordingly, Defendants knowingly or recklessly made false and material representations, and otherwise failed to disclose material information, on which the Plaintiff relied upon in funding monies to these Defendants.

100. At the time that the false representations and/or concealments were made to the Plaintiff by these Defendants, these Defendants knew the statements were false or incomplete, or should have reasonably known that the statements were false or incomplete.

101. The false representations and/or concealments made by these Defendant were calculated to deceive, and were made and done with the intent to deceive; and Plaintiff was, in fact, deceived by the false representations and/or concealments.

102. The false representations and/or concealments were made by these Defendants with the intention that the Plaintiff rely on the same, and Plaintiff did rely on the same, to its detriment, and on the representations and/or concealments by these Defendants was reasonable, under the circumstances.

103. Had these Defendants disclosed the aforementioned material facts to the Plaintiff, Plaintiff would never have provided funds to these Defendants and would have demanded greater control of their funds.

104. As a direct and proximate cause of Defendants' fraudulent misrepresentations and/or concealments of material facts, the Plaintiff has been damaged, and is entitled to recover from Defendants, jointly and severally, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

105. Upon information and belief, the conduct, acts and omissions of these Defendants alleged herein constitute fraud and willful and wanton conduct in reckless disregard and indifference to the well-being of the Plaintiff. Therefore, the Plaintiff is entitled to recover punitive damages from these Defendants in an amount to be determined at the trial of this matter.

### SIXTH CLAIM FOR RELIEF
(*In the alternative* – **Negligent Misrepresentations – Fraud- Herstik/Legacy Defence/Color One**)

106. Plaintiff incorporates herein by reference all of the allegations in this Complaint as if fully set forth herein.

107. As set forth above, these Defendants had a duty to exercise reasonable care or competence in obtaining or communicating information to Plaintiff, who would rely on information supplied by Defendants.

108. In the course of their business, Defendants supplied information to the Plaintiff and intended for the Plaintiff to rely on that information for their guidance or benefit with respect to transactions with Legacy and Color One.

109. As stated above, these Defendants made material misrepresentations or failed to exercise due care when it made material misrepresentations.

110. These Defendants failed to exercise reasonable care or competence in obtaining or communicating the false information detailed above and the Plaintiff actually relied on the false information supplied by Defendants and Plaintiff's reliance was justifiable.

111. As a sole and proximate result of these Defendants' negligent misrepresentations, the Plaintiffs have suffered pecuniary losses, and are thereby entitled to judgment against these Defendants, jointly and severally, in a sum in excess of Seventy Five Thousand Dollars ($75,000.00).

## SEVENTH CLAIM FOR RELIEF
### (Negligence – PK, TopOcean, and MSC)

112. Plaintiff incorporates herein by reference all of the allegations in this Complaint as if fully set forth herein.

113. As transit carriers for cargo of OM, PK, TopOcean and MSC were required to act with reasonable skill, care and diligence.

114. To the extent it is determined that the Bienali and OKC orders were damaged or stolen in transit from Color One to California than PK, TopOcean, and/or MSC's conduct was negligent.

115. PK, TopOcean and/or MSC owed Plaintiff a duty to exercise the care that a reasonable transit carrier would exercise under similar circumstances.

116. PK, TopOcean, and/or MSC breached said duty it owed to the Plaintiff as detailed above.

117. By reason of the actions described above, PK, TopOcean, and/or MSC have breached their duty of care to Plaintiff, and as a direct and proximate cause of said breach, Plaintiff has incurred damages, all of which were reasonably foreseeable to PK, TopOcean and/or MSC, which include, and are entitled to have and recover from PK, TopOcean and/or MSC, jointly and severally, a sum in excess of Seventy Five Thousand Dollars ($75,000.00).

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Judgment)

118. The Plaintiff brings this Claim for Relief pursuant to 28 U.S.C. § 2201 or N.C. Gen. Stat. § 1-253, *et. seq.*

119. This court has jurisdiction over the parties and there is a justiciable case and/or controversy between the parties, regarding: (a) where the funds OM provided Defendant Legacy Defence and Defendant Zabner went, (b) the use by any of the Defendants of any amounts paid them by OM.

120. The Plaintiff has the right, therefore, to have this Court issue its declaratory judgment on these and any other issues that might arise during this course of this litigation.

## NINTH CLAIM FOR RELIEF
### (Motion for Temporary Restraining Order and
### Preliminary and Permanent Injunction - Defendants Herstik, Legacy Defence, Take Care, Zabner, and Color One)

121. Plaintiff incorporates herein by reference the allegations contained in the Complaint as if fully set forth herein.

122. Plaintiff seeks temporary and permanent injunctive relief pursuant to Federal Rule of Civil Procedure 65, Federal Rule of Bankruptcy Procedure 7065, E.D.N.C. LBR 7065-1, and § 105(a) of the Bankruptcy Code

   A. Ordering Defendants Herstik, Legacy Defence, Take Care, Zabner, and Color One to provide an immediate accounting of all funds provided them related to OM as follows:
      i. The use of the OfficeMart ("OM") funds received;
      ii. The date of any disbursement of the OM funds including;
         1. To Whom a Disbursement was made;
         2. The Routing and Bank Account Information for the disbursement made for both sender and recipient;
         3. The date and time of the disbursement.
      iii. The date of Defendant's receipt of any funds related to OM including
         1. Who each Defendant received the funds from;

16

    2. The Routing and Bank Account Information for the receipt for both sender and recipient;
    3. What amount of funds each Defendant is currently holding in trust or otherwise

  iv. The date of each Defendant's receipt of any funds related to Legacy Defense or its agents within the last ninety (90) day including;
    1. Who each Defendant received the funds from;
    2. The Routing and Bank Account Information for the receipt for both sender and recipient;
    3. The purpose behind the receipt of said funds
    4. What amount of funds each Defendant is currently holding in trust or otherwise

B. prohibiting the disbursement or use of any funds referenced pending further orders from this Court.

123. Absent preliminary and permanent injunctive relief, Plaintiff will suffer irreparable harm arising from Defendants' future conduct.

124. Given the significant concern that the Defendants will abscond with the funds owed OM, Plaintiffs have no adequate remedy at law because monetary damages are incapable of protecting them from the divesture of the money owed it.

125. Plaintiffs has demonstrated a likelihood of success on the merits and that Defendant's continuous and deliberate course of conduct, actions and methods are not proper and unlawful.

126. By reason of all of the foregoing, Plaintiff is entitled to a Temporary Restraining Order, and a Preliminary and Permanent Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Rule 7065 of the Federal Rules of Bankruptcy Procedure, and E.D.N.C. LBR 7065-1, temporarily and permanently: (i) Ordering Defendants Herstik, Legacy Defence, Take Care, Zabner, and Color One to provide an immediate accounting of all funds provided it related to OM, (ii) Ordering Defendants Herstik, Legacy Defence, Take Care, Zabner, and Color One to provide an immediate accounting of all nitrile gloves in their possession, (iii) prohibiting the

disbursement or use of any funds referenced pending further orders from this Court, and (iv) an immediate accounting of Defendants Herstik, Legacy Defence, Take Care, Zabner, and Color One accounts related to OM transactions.

## **TENTH CLAIM FOR RELIEF**
**(Demand for an Accounting – Zabner, Herstik, Legacy Defence, Take Care, and Color One)**

127. Plaintiff incorporates herein by reference the allegations contained in the Complaint as if fully set forth herein.

128. Plaintiff demands an accounting of Defendants Zabner, Herstik, Legacy Defence, Take Care, and Color One's bank accounts to provide an immediate accounting of all funds provided it related to OM.

**WHEREFORE**, the Plaintiff prays the Court as follows:

1. That the Plaintiff have and recover compensatory damages from the Defendants, excluding Zabner, jointly and severally, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00). plus interest as allowed by law.

2. That the Plaintiff have and recover punitive damages from Defendants Herstik, Legacy Defence, and Color One, jointly and severally, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00)., and to be determined at the trial of this matter.

3. That the costs of this action, including reasonable attorney's fees in accordance with N.C.G.S §75-16.1, be taxed by the Court against Defendants Herstik, Legacy Defence, and Color One.

4. That any damages awarded the Plaintiff be trebled pursuant to provisions of N.C.G.S. §75-16.

5. That the Court issue a Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction Permanent Injunction, and Accounting, as stated above.

6. For a trial by jury on all issues so triable.

7. For such other and further relief as to the Court deems just and proper.

Respectfully submitted this, the  23rd day of July, 2021.

**BUCKMILLER, BOYETTE & FROST, PLLC**
BY: s/Matthew W. Buckmiller
MATTHEW W. BUCKMILLER, NCSB No. 35194
mbuckmiller@bbflawfirm.com
4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
TEL:   (919) 296-5040
FAX:   (919) 977-7101
*Attorneys for Plaintiff*

## VERIFICATION

The undersigned being first duly sworn, deposes and states that he is the CEO of the Plaintiff in in the above-captioned civil action and he has read the **COMPLAINT** and, based upon his personal knowledge, the matters and statements contained therein are true and accurate, except as to those matters or statements made upon information and belief, and as to those, he believes them to be true to the best of his knowledge.

JASON ANGEL

STATE OF NORTH CAROLINA

COUNTY OF WAKE

I, __Catherine P. Landis__, a Notary Public of the aforesaid County and State, do hereby certify that **JASON ANGEL** personally appeared before me this date and acknowledged the due execution of the foregoing instrument in the capacity indicated.

Witness my hand and Notarial Seal on this the 21st day of July, 2021.

Signature of Notary Public

OFFICIAL STAMP/SEAL

Printed Name: Catherine P. Landis
My Commission Expires: 4-4-23